J. C. THOMSON v. HARNETT COUNTY, a BODY POLITIC AND CORPORATE, AND
J. B. ENNIS, J. S. BARKER, G. R. NOEL, AND E. L. COOK, AND A. A.
CAMERON, AS THE BOARD OF COMMISSIONERS OF HARNETT
COUNTY.

(Filed 18 March, 1936.)

1. **Taxation A c—Issuance of county bonds held not to violate constitutional mandate that property may not be taken but by law of the land.**

Under the provisions of ch. 342, Public-Local Laws of 1935, defendant county proposed to issue county bonds bearing 4% interest to refinance township road bonds issued by the townships of the county, the township bonds to remain valid and to be acquired by the county and held in a sinking fund, and the county bonds to be paid by a tax equal to 6% of the bonds issued by each township to be levied in the respective townships. *Held:* The proposed county bond issue is merely to refinance the township unit bonds, and the possibility of a deficit requiring payment by the county as a whole is remote, and plaintiff taxpayer's contention that the statute violates Art. I, sec. 17, of the State Constitution, prohibiting the taking of property but by the law of the land, is untenable.

2. **Counties E b—County bond issue to refinance county township road bonds held for county purpose.**

Under the provisions of ch. 342, Public-Local Laws of 1935, defendant county proposed to issue county bonds to refinance bonds issued by the townships of the county. The proceeds of the township bonds were used in the construction of highways constituting a part of the general highway system of the county, which highways were later taken over by the county, ch. 293, Public-Local Laws of 1925, and thereafter taken over for maintenance and improvement by the State. *Held:* The proposed county bond issue is for a county purpose within the meaning of Art. V, sec. 6 of the Constitution of North Carolina.

3. **Taxation A a—Bond issue to refinance township bonds issued for county highways held for necessary county expense.**

Defendant county proposed to issue bonds to refinance bonds issued by its townships, the proceeds of the township bonds having been used to build highways thereafter taken over by the county as a part of the county highway system. *Held:* The township bonds were for a necessary county expense, and the approval of the majority of the qualified voters of the county is not a prerequisite to the issuance of the refunding bonds, N. C. Constitution, Art. VII, sec. 7.

4. **Taxation A e: Counties A c—Under facts of this case proposed county bond issue held not a tax on one community for benefit of another.**

Under the provisions of ch. 342, Public-Local Laws of 1935, defendant county proposed to issue county bonds bearing 4% interest to refinance township road bonds issued by the townships of the county, the township bonds to remain valid and outstanding and to be acquired by the county and held in a sinking fund, and the county bonds to be paid by a tax equal to 6% of the bonds issued by each township to be levied in the respective townships. The proceeds of the township bonds were used in the construction of highways later taken over by the county as a part of

the county highway system. *Held:* Since the proceeds of the township bonds were used for a necessary county expense and the entire county received the benefit of the expenditure by the townships, and since N. C. Constitution, Art. VII, sec. 2, imposes the duty on the county commissioners to supervise roads, the levying of taxes and finances of the county, objection to the proposed county bond issue on the ground that the statute authorizing the bond issue violates N. C. Constitution, Art. VII, sec. 9, by granting the power to tax one community or local tax district for the exclusive benefit of another, is untenable.

5. **Constitutional Law A a—**

Our Constitution is not static, but must be liberally construed to meet changing conditions.

6. **Counties A a—**

A county is but an agency of the State, and is subject to almost unlimited legislative control in the exercise of ordinary governmental functions.

APPEAL by plaintiff from *Sinclair, J.,* at Chambers, 17 February, 1936, in Lillington, N. C. From HARNETT. Affirmed.

This is an injunctive proceeding, brought by plaintiff against defendants, to restrain them from issuing $427,000 of county bonds.

The judgment in the court below was as follows:

"This cause coming on to be heard before the undersigned judge holding the courts of the Fourth Judicial District, at chambers in Lillington, North Carolina, on 17 February, 1936, upon the complaint, treated as an affidavit, and the demurrer of the defendants, the court concludes:

"1. That the bond issues of the several townships of Harnett County described in the complaint, now outstanding and unprovided for, totaling $427,000, were issued lawfully, and the proceeds thereof expended for the improvement of the public roads constituting the public road system of Harnett County.

"2. That said bonds are and will remain valid obligations against the taxable properties of the several townships issuing them until paid, and the continued levying and collecting of a tax to pay at least the interest thereon by the commissioners of Harnett County is a valid exercise of the taxing power.

"3. That the county of Harnett as a whole received a direct benefit from the expenditure of the money represented by said indebtedness, and the proposed underwriting of said indebtedness by the issuance of county bonds is in accordance with law and for a county purpose.

"4. That the carrying out of the proposed arrangements, as outlined in the complaint, will violate no constitutional right of the plaintiff, or any other taxpayer, but will inure to the benefit of the plaintiff and all other taxpayers of the county as a whole.

"Therefore, the motion of the plaintiff for an injunction is denied, the proposed issuance of bonds is declared to be a valid and lawful exercise

of the authority vested by law and in said board of commissioners, and the action is therefore dismissed. N. A. Sinclair, Judge."

The plaintiff excepted and assigned error to the judgment as signed, and appealed to the Supreme Court. The exception and assignment of error and necessary facts will be set forth in the opinion.

*Jernigan, Godwin & Strickland for plaintiff.*

*I. R. Williams, county attorney, and Ross & Ross, special attorneys, for the defendants.*

CLARKSON, J. *The facts:* Under and by virtue of the provisions of chapter 427 of the Public-Local Laws of 1913, each and every one of the townships of Harnett County from time to time issued township road bonds by vote of the people, and expended the proceeds of the said road bonds upon the improvement and development of the public roads of the county lying within the respective townships, the said bonds being in the total sum of $430,000. None of the principal of the said bonds has been paid, except $3,000 of the bonds of Buckhorn Township, and the remainder of the said principal remains due and unpaid, and no provision has been made by the respective townships for the payment of the said principal sum.

Section 17 of the act provides that the township road commissions to be set up in the event of a favorable vote in each township shall "succeed to and have all of the rights, powers, and duties, not inconsistent with the provisions of this act, now conferred by law upon the township board of supervisors." The act does not deprive the board of county commissioners of their general right to aid in the improvement of the public roads of the county.

Chapter 293 of the Public-Local Laws of 1925, substituted for the existing several agencies of township road commissions, one commission for the entire county, and vested in this county highway commission the control of the roads then being maintained and improved by the several townships, and that act, in section 13, expressly declared, with reference to the outstanding township bonds: "The proceeds of said bonds are hereby declared and found to have been expended for the necessary improvement of the public roads of Harnett County." The county commissioners were, in that act, authorized, in their discretion (section 13), "to purchase or assume the payment of any and all of the road bonds of the several townships heretofore issued and outstanding." This discretion, however, was never exercised.

By chapter 342 of the Public-Local Laws of 1935, after reciting in detail the outstanding township road bond issues, it was declared: "The proceeds of the said bonds were used for the purpose of the neces-

sary improvement of public roads constituting a part of the general road system of the county, and the entire county received direct benefit from the said expenditures, and the county as a whole was relieved of an expenditure which otherwise would have fallen upon the whole county."

The several townships of Harnett County issued road bonds between 1 October, 1914, and 1 July, 1921. These bonds constitute obligations of the respective townships. The proceeds thereof were spent in the respective townships for improving roads therein which the General Assembly has declared constitute "a part of the general road system of the county." Some of these township road bonds are now in default.

Chapter 342, Public-Local Laws 1935, *supra*—"An act to authorize refunding bonds for the county of Harnett for the retirement of township road bonds in said county," provides that the township bonds are in all respects validated; that Harnett County is authorized to issue full faith and credit bonds of the county bearing interest not exceeding 4% per annum and maturing serially over not to exceed thirty years, and to levy and collect annually upon the entire taxable property of the county such tax as may be necessary, in addition to other sources of revenue provided in the act to pay interest and principal on the county bonds as the same may become due. The act declares that the county bonds and tax are for meeting a necessary expense of the county, and provides that with the consent of the Local Government Commission as to each transaction, the Board of Commissioners may exchange the bonds authorized by the act for township bonds, or, after their sale at not less than par, may use the proceeds for the exclusive purpose of purchasing township bonds of the issues described in the preambles, all upon such terms as may be agreed upon with the holders of township bonds, but not more than par for par; that the township bonds so "acquired" shall remain valid obligations of the respective townships, and shall be deposited in the sinking fund for the county bonds and held for the purpose of paying the county bonds; that the board shall be required to levy and collect annually in each township a tax sufficient to pay at least 6% interest annually on the township bonds now outstanding and unpaid; that proportion of the collections from this tax which represents the proportion of the total outstanding township bonds which are held in the sinking fund, shall be paid to the sinking fund; and that such tax and payments are to continue in each township until collections from such township are sufficient to retire an amount of the county bonds equal to the amount of bonds of such township acquired by the sinking fund.

Under the authority of the above act, the board of commissioners for the county of Harnett has adopted a resolution providing for the issuance of $427,000 Harnett County Township Road Refunding Bonds.

This resolution describes the township bonds to be acquired by purchase or exchange for the county bonds authorized. The county accountant is directed to negotiate and enter into agreements with the holders of the township bonds, subject to the approval of the board of commissioners of Harnett County, on the most advantageous terms available to the county, for the acquisition of such bonds.

The act is challenged by the plaintiff upon the grounds: First, that it is the taking of the plaintiff taxpayer's property other than by the the law of the land; second, that it is an authorization of a county tax for other than a county purpose; third, that it is not for a necessary expense; and fourth, that it violates Article VII, sec. 9, of the Constitution, by levying a tax on the community or taxing district for the exclusive benefit of another.

Plaintiff says the questions present are: "(1) Does chapter 342, Public-Local Laws of North Carolina, 1935, violate Article I, sec. 17, of the North Carolina Constitution, which prohibits the taking of plaintiff's property other than by law of the land? (2) Does the act violate Article V, sec. 6, of the North Carolina Constitution, which prohibits the levy of a county tax for other than a county purpose? (3) Does the act violate Article VII, sec. 7, of the North Carolina Constitution, which prohibits a county from contracting a debt and levying a tax for other than a necessary expense of the county without a vote of the majority of the qualified voters therein? (4) Does the act violate Article VII, sec. 9, of the North Carolina Constitution, by granting the power to tax one community or district for the exclusive benefit of another?" We do not think the contentions of plaintiff can be sustained.

The *first* question: The township units are pledged now to pay the principal and 6% interest on its present bonds. The county issue under the act in controversy is in the aggregate sum of $427,000, and is for the amount of all the township units, and the issue is restricted to be sold or exchanged at 4% to aid these units. We cannot see how there can be any possibility of a deficit under the new issuance of bonds of 4% when the township units are pledged to pay 6%. It is an easy method of financing the township unit bonds and does not deprive plaintiff of his property. It does not impinge the Constitution "but by the law of the land."

The *second* question: Under Article V, sec. 6, in *Brooks v. Avery County,* 206 N. C., 840, it is held: "A county has authority to issue funding and refunding bonds with the approval of the Local Government Commission to take up valid, outstanding indebtedness of the county which was incurred for necessary county expenses. Article V, sec. 6."

THOMSON *v.* HARNETT COUNTY.

We think, under the facts and circumstances of this case, the bonds are for a county purpose. It may be noted that the county roads were taken over by the State for maintenance and improvement, and are now maintained and improved by the State. Public Laws 1931, ch. 145.

In *Hill v. Comrs.,* 190 N. C., 123, it is held: "A public-local law authorizing the commissioners of a county to take over a specified highway within the county, constituting one of the principal highways within the county, connecting two important State highways, transferring to the said commissioners the bridges of the various townships for their care and supervision, is not violative of Article II, sec. 29, of our Constitution against direct legislation by local, private, or special act, nor the taking of property without the due process of law, Article I, sec. 17; nor the pledging of the county's faith or credit without the approval of the voters, etc., Article VII, sec. 7; nor against the uniformity rule, Art. VII, sec. 9."

The *third* question: It has been held by this Court that roads are necessary expenses. Citing a wealth of authorities, it is said in *Barbour v. Wake County,* 197 N. C., 314 (317): "It has been held in this jurisdiction that the construction and repair of bridges and roads are necessary expenses. To contract a debt for such purposes, a vote of the majority of the qualified voters of a county is not a prerequisite."

The *fourth* question: The plaintiff contends that "The act violates Article VII, sec. 9, of the North Carolina Constitution, by granting the power to tax one community or local taxing district for the exclusive benefit of another." *Commissioners v. Lacy,* 174 N. C., 141; *Ellis v. Greene,* 191 N. C., 761 (766).

Constitution of North Carolina, Article VII, sec. 2, is as follows: "It shall be the duty of the commissioners to exercise a general supervision and control of the penal and charitable institutions, schools, roads, bridges, levying of taxes and finances of the county, as may be prescribed by law. The register of deeds shall be, *ex officio,* clerk of the board of commissioners." The General Assembly can, "as may be prescribed by law," give almost unlimited power to the counties to carry out this provision of the Constitution.

The act in controversy does not in any way impair the obligation of the township bonds. These bonds are valid obligations of the townships. Under Article VII, sec. 2, of the Constitution, above quoted, the commissioners of a county have the duty to exercise a general supervision and control of the roads and levying of taxes as prescribed by law in reference to roads. By legislative authority all these roads were taken over by the county and the act of 1935 declared that the entire county received direct benefit from the expenditures in the townships, and the county as a whole was relieved of an expenditure which otherwise would have fallen upon the whole county.

In *Reeves v. Buncombe County*, 204 N. C., 45 (47), *Brogden, J.*, writing the opinion for the Court, distinguishes *Commissioners v. Lacy, supra,* and *Ellis v. Greene, supra,* and says: "The record discloses that the proceeds of both bond issues were spent upon roads and bridges in Black Mountain Township, 'which said roads and bridges were later taken over by the county of Buncombe as a part of the highway system of said county, and later taken over by the State Highway Commission, and are now under the control of same.' Manifestly, the facts so established disclose that the project was not one of local or township benefit, supervision, and control, but such expenditure was made (quoting from *Comrs. v. Lacy, supra*) 'for the public benefit or a part of the State or county system.' Hence, the law impresses upon the bond issues the character and quality of a county-wide obligation."

Our Constitution is not static—it is elastic to meet changing conditions. It must be liberally construed, as was done in the *Reeves case, supra.* The act in controversy cannot injure plaintiff, but is an aid to the townships to meet changed conditions. A county is subject to almost unlimited legislative control in the exercise of ordinary governmental functions, it being but an agency of the State. *Day v. Commissioners,* 191 N. C., 780.

For the reasons given, the judgment of the court below is
Affirmed.